[Civ. No. 12001. First Dist., Div. Two. Apr. 7, 1942.]

CARL HAGENBURGER et al., Respondents, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and William Christensen and Bourke Jones, Deputies City Attorney, for Appellants.

Tanner, Odell & Taft for Respondents.

NOURSE, P. J.—The plaintiffs instituted this action to restrain the enforcement of a municipal zoning ordinance insofar as it related to the property occupied by them in block 49 of a subdivision in the western section of the city of Los Angeles.

About 1921 they acquired a lot on Santa Monica Boulevard and subsequently acquired three adjoining lots, all in block 50, upon which they established a nursery. This property extended north to Ohio Avenue and was all zoned as business property. In 1931 they leased four lots in block 49 which faced on the south side of Ohio Avenue opposite the nursery, and they acquired these lots by purchase in 1939. These lots extended north to a narrow alley which separated them from property of a local high school, and were zoned as residential property in 1923. At the time of the lease there was a residence on one of the lots and a building occupied and used in the business of a laundry on another. Lot 1 of the same block was used by another in the operation of a dirt and stone hauling business. Upon the school grounds across the narrow alley from the lots in question there were situated an athletic field, bleachers and a school nursery, the latter lying about 100 feet from the parcel of land leased by the respondents. This nursery had been maintained for many years with lath houses, hot houses and other buildings on the school property, and large quantities of trays, pots, containers, dirt and fertilizer lay in plain view from plaintiffs' property. The lots in block 50 upon which the main business of plaintiffs' nursery is conducted have frontages on both Ohio Avenue and Santa Monica Boulevard, both of which are heavily traveled streets within a strictly business territory.

The plaintiffs have for many years carried on a specialized nursery business from the premises located in block 50 with their principal office maintained on Santa Monica Boulevard. The business is chiefly wholesale and is confined to the trade in cactus, succulents and novelty plants. Since their acquisition of the lots in block 49 the plaintiffs have used those lots entirely for the purpose of seeding, planting

and raising plants, some of which are grown in flats, some in pots, and an average of about 150,000 a year are grown directly in the ground. Sales are not ordinarily made from these lots, and the plants are not there displayed for sale. Specimens are kept in the main plant on Santa Monica Boulevard from which sales are made. When sales of the plants grown in block 49 are made they are dug out of the ground and taken across Ohio Avenue to the packing shed where they are wrapped and prepared for delivery. This practice had been carried on for about ten years before this proceeding was commenced without serious objection from those in the neighborhood. The lots involved in this proceeding upon which the nursery stock is planted and raised are located in a narrow strip between a well used business section and the rear of the plot of land used by the high school on which are located the athletic field, the athletic bleachers or grand stand, and the school nursery.

It is upon the facts thus presented that the trial court found that the enforcement of the ordinance as to plaintiffs' use of the four lots in block 49 was unreasonable; that plaintiffs had for approximately ten years last past been in possession of "and engaged in farming said lots"; that during said ten years they have improved said property and expended great sums of money thereon and have established a garden thereon, products from which are sold and delivered from the premises on the other side of Ohio Avenue; that the plants raised thereon required constant care, cultivation, attention and irrigation, and that the use which the plaintiffs have made of said lots is that of "farming" within the meaning of the zoning ordinance. Section 12.04 (e) of the zoning ordinance provides in part as follows: "Any lot or premises may be used for farming, the keeping of domestic live stock and the raising of poultry, rabbits, bees, pigeons or other similar enterprises . . . Nothing herein contained shall be construed as permitting dairies, stockyards, cattle feeding yards, horse corrals or stables except for private use, hog or goat ranches, hog or goat raising establishments or dog or cat breeding establishments."

When a zoning ordinance of this type is under attack it is not necessary for the court to consider the validity of the ordinance as a whole, but it may direct the attack to the reasonableness of the enforcement of the ordinance against the particular property involved. Hence, it may be assumed

that this ordinance is generally valid for the purposes intended, but if it is unreasonable, arbitrary and discriminatory as applied to respondents' land, the judgment restraining the operation of the ordinance in respect to those particular parcels should be affirmed. This is the settled rule of decision as recently announced in *Reynolds* v. *Barrett*, 12 Cal. (2d) 244 [83 P. (2d) 29], where numerous authorities are cited. The trial court based its finding and conclusion that this particular ordinance was unreasonable as to respondents' property upon all the surrounding circumstances, including the showing that because of the use to which the properties surrounding these particular lots were put, they were no longer suitable or desirable for residential purposes, and also because of the fact that the use to which the respondents put these parcels was a farming use within the contemplation of the ordinance.

The question of what constitutes "farming" is one which has been subject to much comment in the decisions. The authorities which define the term are found generally in the cases involving the operation of workmen's compensation acts where "farm labor" is exempted from the operation of the act. Webster defines "farming" as the act or business of cultivating the land; the business of tilling the soil; to produce crops or animals on a farm. He defines a farm as a plot or tract of land devoted to the raising of domestic or other animals; as a chicken farm; a fox farm; a tract of land devoted to agricultural purposes. "Agriculture" he defines as the art or science of cultivating the ground; the art or science of the production of plants and animals useful to man or beast; it includes gardening or horticulture, fruit growing, and storage and marketing. The terms farming, husbandry and tillage are said to be synonymous of or equivalent of the term agriculture. (3 C. J. S., p. 366.) In *Ginn* v. *Forest Nursery Co.*, 165 Tenn. 9 [52 S. W. (2d) 141], where the question was whether an employee in a nursery was a "farm laborer" within the exception of the Workmen's Compensation Act whose duties were to till the soil, to tend growing plants, shrubs and young trees, to prepare them for market and to deliver them to a shipping point, the court said (p. 142): "The harvesting and marketing of grain, the transplanting and care of tobacco plants, and the delivery of a bale of cotton from farm to shipping point, are all ordinary incidents of farm labor. The work and labor per-

formed by plaintiff in error differed from that of the ordinary farmer only in the kind and nature of the products of the soil grown and prepared for market. No difference in hours of labor, hazard, or remuneration is pointed out which might induce a Legislature to include the one and exclude the other from the operation of the statute. The labor performed by plaintiff in error and contemplated by his employment was agricultural in the literal sense and meaning of the word, and we think we would not be justified in holding that he was not a 'farm or agricultural laborer.' ''

In *Hill* v. *Georgia Casualty Co.* (Tex. Com. App.), 45 S. W. (2d) 566, the Texas court in defining horticulture said: "The cultivation of a garden or orchard; the science or art of growing fruits, vegetables, and flowers or ornamental plants. Horticulture is a branch of plant production, which is one of the main divisions of agriculture." In affirming the decision the same court held in *Guerrero* v. *United States Fidelity & Guaranty Co.*, 128 Tex. 407 [98 S. W. (2d) 796], that the Workmen's Compensation Act intended the exemption of the "farming and agricultural industry," and that "On the theory that horticulture is one of the main divisions of agriculture, it was held in the Hill case that one who was engaged as a laborer for a nurseryman or in the nursery business was a 'farm laborer' within the meaning of the statute . . ."

In *In re Bronxville Nurseries*, 258 App. Div. 1019 [17 N. Y. S. (2d) 95], the employees of a nursery company were held to be farm laborers within the Workmen's Compensation Act where it was found that their duties consisted of "the preparation, fertilization, and cultivation of the soil, seeding, budding, grafting, transplanting and related operations, the constant care of the products of the soil which calls for a knowledge of modern scientific methods, and the preparation for market of the finished product, whether it be tree, shrub, bush or plant." In that case it was also pointed out that pending the appeal the statute was amended in 1939 defining the term "farm laborer" to include all the activities above noted.

Appellants rely upon *Hein* v. *Ludwig*, 118 Pa. Super. 152 [179 Atl. 917], where the Pennsylvania court held that workmen employed in the green houses of a commercial florist were not farm laborers within the Workmen's Compensation Act. It was therein pointed out that the property of the

employer "was devoted to no use other than the operation of her greenhouses, which were artificially heated by means of steam and mechanically watered." The court referred to an early definition of agriculture as contemplating the cultivation of a large tract of land and indicated that the term would also include fruit growing, but it held that since the employee was engaged in the greenhouse alone, and therefore was not engaged in the cultivation or tilling of the soil he could not be deemed an "agricultural worker," and in this connection it emphasized the fact that the plants and flowers were raised under artificial conditions in a commercial plant rather than in the open ground which might be termed a "farm." Appellants also rely upon *Chudnov* v. *Board of Appeals*, 113 Conn. 49 [154 Atl. 161]. There the question at issue was whether permission to engage in "farming, truck gardening, nurseries or greenhouses" in any of the residential zones permitted the use of a plot for raising poultry. The court adopted the definition of "farming" found in 25 Corpus Juris, page 674, as "The business of cultivating land, or employing it for purposes of husbandry. . . ." It also accepted the expression found in *Hein* v. *Ludwig, supra,* that the word "farming" was used to denote a considerable tract of land devoted to the cultivation of crops and produce. Though it was recognized that a farmer who owns a large tract of land under cultivation, a small portion of which is devoted to a dairy or to raising chickens, is nevertheless a farmer, it was held that a small tract devoted exclusively to raising live stock or chickens was not a farm. *Story* v. *Christin,* 14 Cal. (2d) 592 [95 P. (2d) 925, 125 A. L. R. 1402], is also cited holding that nursery stock does not constitute a crop and does not become part of the realty, but we do not deem this in point here.

The controlling point here is that the ordinance permits the use of "any lot or premises . . . for farming, the keeping of domestic live stock and the raising of poultry, rabbits, etc.," and that it made several specific exceptions to such uses. The use of the lots for the raising of plants and flowers not being included in the exceptions it must be assumed that the city council in adopting this ordinance knew the measurements and area of the separate lots in the territory, and that it did not therefore use the word "farming" as applying to the cultivation of a large tract of land. To the contrary it would seem that the term was used as it is defined

in volume 25 Corpus Juris 672, as "an indefinite quantity of land, some of which is cultivated, whether it is large or small, isolated, or made up of many parcels, for a farm may be of any size, of any shape, of any boundaries, and may include less than one lot, or comprise several lots or parts of lots." Though in a restricted sense "farming" has been used to apply to the cultivation of large tracts of land for the production of crops for the use of man and animals, here the city council used the word in its general sense as including gardening or horticulture, fruit growing, the raising of vegetables, trees, shrubs, plants and similar products.

The judgment appealed from is based upon the two findings of fact and the conclusions of law founded thereon that, (1) because of the surrounding circumstances the enforcement of the ordinance as to respondents would be unreasonable under the rule of *Reynolds* v. *Barrett, supra,* and (2) that the residential restrictions of the ordinance did not apply to respondents as long as they were engaged in the activities outlined in the findings of fact because such activities consisted of "farming" within the exceptions of the ordinance. We are in accord with both of these conclusions.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 1, 1942.