[S. F. No. 19670. In Bank. Apr. 19, 1957.]

CARL M. FRAENKEL, Appellant, v. J. G. TRESCONY, Respondent.

Carroll F. Jacoby and Jack Flinn for Appellant.

John W. Hutton for Respondent.

SPENCE, J.—Plaintiff sought to recover the unpaid balance allegedly due from defendant for the construction of a grain elevator. Upon the ground that plaintiff failed to allege that he was a licensed contractor (Bus. & Prof. Code, § 7031), defendant's demurrer to plaintiff's complaint was sustained without leave to amend. Plaintiff appealed and the judgment was reversed in order to afford plaintiff the opportunity to amend his complaint to show that the construction work was ''incidental . . . to farming'' so as to avoid the state licensing requirement. (Bus. & Prof. Code, § 7049; *Fraenkel* v. *Trescony,* 40 Cal.2d 905 [256 P.2d 573].) Plaintiff thereupon amended his complaint and the case was tried upon the single issue of whether the farming exemption applied. The trial court found that it did not and therefore plaintiff's failure to comply with the contractor's license law precluded his recovery. (Bus. & Prof. Code, §§ 7026, 7028, 7031.) From the adverse judgment accordingly entered, plaintiff now appeals.

At the trial the court and both parties treated the holding in *Fraenkel* v. *Bank of America,* 40 Cal.2d 845 [256 P.2d 569], a companion case on the first appeal, as stating the governing principle: ''that the construction must be located on a farm and must be incidental to the farmer's own farming operations in order to be 'incidental to farming,' within the meaning of the exemption.'' (P. 849.) Consistent with this interpretation of the statutory language, the trial court's judgment, based upon its determination that the construction in question did not qualify under the farming exemption, must be affirmed.

Plaintiff, a licensed mechanical engineer, and defendant entered into a written contract calling for plaintiff's construction of a grain elevator on a ''cost plus ten per cent'' basis. The elevator was built on property owned by defendant in the town of San Lucas. It was located on Main Street amidst business buildings and homes on town lots and adjacent to the Southern Pacific main line tracks. Nearby there were also commercially operated grain sheds and storage bins owned by another individual. The site for defendant's grain elevator was approximately 3½ miles from defendant's farm and its only access therefrom was by public road.

The trial court found that the grain elevator was "not constructed on a farm, either actually or constructively"; that it "was designed with the intent that it would be usable primarily for the defendant's own produce, but also for the storage of the grain of others on a rental basis"; and that such structure was "incidental to both farming and commercial operation by the defendant." In line with these findings that the grain elevator was not located on a farm and was to be used to some extent for commercial purposes, the court concluded that the statutory farming exemption was of no avail to plaintiff and, in the admitted absence of the required contractor's license, plaintiff could not recover.

Plaintiff contends that the evidence does not support the above findings except that portion declaring that the primary purpose of the grain elevator was for the storage of defendant's own produce. In this regard, he cites these undisputed facts: that the size of the grain elevator, 1,000-ton capacity, was determined from the acreage and past harvests of defendant; that any excess storage space would be available for rent to others only in the event defendant should have a "short season"; that in actual use the first year's storage consisted of 800 tons of defendant's own grain and 200 tons on rental, and in the next year's storage the respective amounts were 700 tons of defendant's own grain and 300 tons on rental; that defendant did not have a warehouseman's license; and that defendant financed the construction of the grain elevator through a loan from the Commodity Credit Corporation with the understanding that such loans were allowed only for the purpose of erecting storage facilities for the farmer's own produce, and not for commercial or other purposes. Under these circumstances, plaintiff distinguishes this case from *Machinery Engineering Co.* v. *Nickel,* 101 Cal.App.2d 748 [226 P.2d 78], where a hay processing mill "[a]dmittedly . . . was not to be connected with any particular farm as a part thereof, or used in connection with any particular farm" but was "intended to be a commercial enterprise . . . to grind the hay of farmers generally, located in the area" (pp. 751-752); and from *California Emp. Com.* v. *Butte County etc. Assn.,* 25 Cal.2d 624 [154 P.2d 892], where a warehouse was owned by an incorporated cooperative association, the storage facilities were available alike to both members and nonmembers, and the association as so licensed was held "in essence a commercial enterprise —a profitable *public warehouse business*" (p. 636).

Plaintiff urges that since the construction of the grain ele-

vator was primarily for the purpose of storage of defendant's own produce, and defendant only contemplated the rental of excess storage space in an effort to operate his overall farming enterprise at maximum efficiency, the limited rental use would not reasonably constitute the grain elevator a commercial operation nor deprive it of its fundamental character as a structure incidental to defendant's own farming. However, the merits of plaintiff's argument on this point need not be here decided, for the record clearly supports the finding that the grain elevator was not "located on a farm" as required for application of the exemption. (*Fraenkel* v. *Bank of America, supra,* 40 Cal.2d 845, 850.)

Admittedly, the grain elevator was erected on a town site, which was approximately 3½ miles distant from defendant's farm, and the only access between the two places was by a public road. The site was adjacent to the main railroad lines servicing the town; other nearby property was industrial or commercial in character rather than agricultural; and specifically, the parcel of land adjoining defendant's town property was occupied by a commercially operated grain elevator for the use of neighboring farmers. ▪ A farm is generally defined "as a tract of land used for raising crops or rearing animals—one devoted to agriculture, stock raising or some allied industry." (*Board of Supervisors* v. *Cothran,* 84 Cal. App.2d 679, 682 [191 P.2d 506] ; see also *Hagenburger* v. *City of Los Angeles,* 51 Cal.App.2d 161, 164 [124 P.2d 345].)
▪ It is true that in keeping with modern methods and advancement in mechanized operations, present-day farming may encompass the use of multiple scattered tracts rather than a single parcel of land, and the requirements for the efficient functioning of a large farming enterprise cannot be measured in the light of farming conditions as they existed "a century or more ago." (*Irvine Co.* v. *California Emp. Com.,* 27 Cal. 2d 570, 582 [165 P.2d 908].) But despite such changes in the prevailing concept of a farming enterprise, still a structure "located on a farm" would reasonably envisage location on land devoted to agriculture as commonly understood to mean on land used for "the raising of crops, or pasture, or both" (35 C.J.S. p. 746) rather than location on property situated in a predominantly industrial or commercial sector of a town some miles from the actual farm on which the crops are produced.

▪ Plaintiff argues that since defendant was a farmer and the owner of a farm, and the grain elevator was designed

primarily for the storage of defendant's own grain, such grain elevator thereby became part of defendant's farm and was thus "located on a farm." Such argument completely eliminates one of the two conjunctively required factors of the farming exemption as construed in *Fraenkel* v. *Bank of America, supra,* 40 Cal.2d 845, 849. From the mere fact that the construction is designed primarily for the storage of a farmer's own farm products, it does not automatically follow that the construction is thereby "located on a farm." As was said in *Fraenkel* v. *Bank of America, supra,* at page 850, it is only "if the grain elevator was built on defendant's farm *and* designed to function as an incidental part of his own farming operations . . . [that] there would be a factual basis for holding such structure to be within the terms of the exemption as a 'construction or operation incidental to . . . farming.'" (Emphasis added.)

To hold otherwise, and permit the farming exemption to apply to construction work which is not performed on a farm, would seem to run counter to the purposes of the contractor's licensing law enacted for the safety and protection of the public respecting structural improvements to real property wherein special skill, training and ability are required. (*Loving & Evans* v. *Blick,* 33 Cal.2d 603, 609 [204 P.2d 23]; *Franklin* v. *Nat C. Goldstone Agency,* 33 Cal.2d 628, 632 [204 P.2d 37].) In exempting construction "incidental to farming" from the state licensing requirements, the Legislature manifestly did not intend to include every structure bearing a possible relation to the farming industry and without regard for its location in relation to the farm. It therefore seems clear that the exemption should not be extended to office buildings, warehouses, grain elevators or similar structures constructed at sites far removed from the farm, and perhaps in the center of cities or towns, even though such facilities might be constructed for the sole use of a single farmer in connection with his own extensive farming operations. Rather, it is only where the particular structure is "located on a farm" and "designed to function as an incidental part" of the farmer's own farming operations (*Fraenkel* v. *Bank of America, supra,* 40 Cal.2d 845, 850) that such structure thereby reasonably becomes "dissociated from the objects and purposes of the licensing law" (*ibid.,* p. 849) and the farming exemption applies. Here the trial court found from the evidence that the grain elevator was not constructed "on a farm," and accordingly plaintiff, as an unlicensed con-

tractor, was properly held to be precluded from maintaining the present action.

The judgment is affirmed.

Gibson, C. J., Traynor, J., and McComb, J., concurred.

SCHAUER, J., Dissenting.—In my view the majority opinion errs egregiously in holding, implicitly, that the defendant by his own act, in concert with a third person, *subsequent to the execution of the contract with plaintiff*, may retroactively render plaintiff's contract with defendant unlawful, and may then invoke his own wrong to defeat plaintiff's right of recovery after the latter's faithful performance of the contract. Such contract, on any reasonable view of the evidence, appears to me to have been lawful when made, lawful in object, and lawful in performance. The only possibly unlawful dealing in connection with it appears to have been defendant's conduct in renting to third persons a portion of the completed elevator storage space and thereby and to that extent apparently engaging in a commercial rather than a strictly farming activity. The principal question argued on appeal is whether the work called for by the contract comes within the farming exemption created by Business and Professions Code, section 7049, hereinafter quoted.

For a clear comprehension of the legal problem involved, the salient facts of the controversy should be borne in mind.

At all times concerned plaintiff has been a "registered professional engineer," skilled in the design and construction of grain elevators, but not "licensed as a contractor." Defendant is engaged in farming some 5,000 acres of land. Plaintiff contracted with defendant to "prepare plans, blueprints and specifications for a grain elevator and storage facility of an approximate capacity of 800 tons of barley," to "sub-contract for the customer" certain specified work, to "furnish all machinery, equipment and materials," and to "inspect and supervise all work performed by others and to furnish a superintendent." The basis of plaintiff's compensation was to be "cost plus ten per cent." It is conceded (at this stage of the litigation) that the terms of the contract bring plaintiff within the definition of a contractor as that term is defined in Business and Professions Code, section 7026, hereinafter quoted. Such concession does not, however, establish that the contract was either unlawful or unenforcible, as will be hereinafter shown.

It is to be emphasized that the controlling issue before us is *not* whether after completion of the structure defendant may have put it to some unlawful use but is whether the contract upon which plaintiff sues was lawful when executed.

The elevator was constructed on land owned by defendant where it would be most efficient in defendant's farming operations; i.e., where it would *not* use up arable land of the main agricultural tract and where it *would* be adjacent to a railroad so that the marketing of defendant's farm produce would involve a minimum of handling. That the railroad's tracks and nearest station happen to lie some 3½ miles from the land on which defendant's grain is grown does not appear to me to be important. The important thing to the farming operation is that the elevator be adjacent to the railroad tracks and station. So located, the farm produce as harvested could be picked up and transported directly to the elevator for temporary storage and direct loading from it onto railroad cars. The tonnage capacity for the elevator was determined from defendant's acreage and past harvests. That fact, as will appear from the law hereinafter developed, is consistent with—and only with—an intention by plaintiff to use his engineering and construction skills lawfully in contracting with defendant to build an elevator to be used by defendant in his farming operation.

It is not disputed that the primary purpose of building the elevator was the efficient marketing (temporary storage and loading for shipment) of defendant's farm produce. We may infer that *defendant,* intending to operate for the greatest possible profit and to that end to pare losses in bad crop years, had in mind also that, when his own crop was short, he might derive some benefit himself—and possibly confer some on neighbors—by renting surplus space. In actual use it appears that the first year's storage consisted of 800 tons of defendant's grain and 200 tons on rental; the next year defendant required space for 700 tons and found rental for 300 tons. But in my view the use to which defendant put the elevator after its construction (as well as any secret intention he may have harbored upon entering into the contract) is wholly immaterial in this litigation between plaintiff and defendant. There is no showing that plaintiff in entering into the contract with defendant had guilty knowledge of the latter's unlawful intentions, if he then had any, as to use of the completed structure.

This litigation is in itself strong evidence of defendant's

alertness and willingness to the end of turning a tidy penny. The trial court found that the contract price of construction was $21,238.95; that during the course of construction defendant paid plaintiff $8,979.94, but has refused to pay any part of the balance. Defendant argues in support of his refusal to pay—and the majority give his legal position their judicial blessing—that the elevator is not located on defendant's farm, that since its construction defendant has used it in some part for commercial rental as well as for his own farming operations, that plaintiff is licensed only as a "professional engineer," that he does not possess a building contractor's license, and that therefore under certain provisions of the Business and Professions Code plaintiff cannot require defendant to pay for what he received.

The pertinent provisions of the Business and Professions Code are as follows:

Section 7026 defines "contractor" as "any person who undertakes to . . . construct . . . any building . . . or other improvement . . . or other structures . . ."

Section 7028 provides that "It is unlawful for any person to engage in the business or act in the capacity of a contractor within this State without having a license therefor, *unless such person is particularly exempted from the provisions of this chapter*." (Italics added.)

Section 7031 provides that "No person engaged in the business . . . of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

Section 7049, however, provides that "This chapter [which contains the last quoted sections] does not apply to any construction or operation incidental to . . . farming, dairying, agriculture, viticulture, horticulture . . . except when performed by a licensee under this chapter." Furthermore, section 7050 provides that the chapter "does not apply to an owner who contracts for a project with a licensed contractor or contractors" (see also § 7030) and section 7051 declares that such chapter "does not apply to a licensed architect or a registered civil or professional engineer acting solely in his professional capacity . . ." The majority expressed the view (in *Fraenkel* v. *Bank of America* (1953), 40 Cal.2d 845, 848 [1] [256 P.2d 569]) that section 7049 exempts "any

construction or operation incidental to . . . farming . . . agriculture'' but they now take the position that the marketing of farm produce is not an incident of farming insofar as it entails the use of a grain elevator which is not located on the parcel of land on which the grain is grown. More specifically, the majority say that plaintiff's other arguments "need not be here decided, for the record clearly supports the finding that the grain elevator was not 'located on a farm' as required for application of the exemption.''

Regardless of the applicability of the other quoted sections dealing with exemptions, it is my view that farming includes marketing the produce of the farm, that a farmer should not be penalized for operating efficiently, and that neither should he be permitted—unless the law is altogether clear and compulsory to that end—to invoke the contractors' license law in such a situation as this in order to achieve unjust enrichment. His defense here is an affirmative defense; he invokes the statute to defeat what otherwise appears to be a just and enforcible claim. Section 7050, hereinabove quoted, suggests that if plaintiff has violated the law by entering into the contract then so also has defendant, for defendant entered into the construction contract with plaintiff, a non-licensed contractor. If defendant at the time of contracting for plaintiff's services intended that the construction should serve any purpose other than one legitimately incidental to his farming operation he violated the law. Is he taking the position now that he confided such intention to plaintiff and conspired with him to commit a crime? How else can he prevail in his defense?

If we construe the law fairly, and particularly if we give any weight whatsoever to the presumption of innocence and the rule of construction against extending a statute in order to find guilt of crime (*People* v. *Valentine* (1946), 28 Cal.2d 121, 143 [20] [169 P.2d 1]; *People* v. *Smith* (1955), 44 Cal.2d 77, 79 [2] [3] [279 P.2d 33], we should conclude that neither plaintiff nor defendant was guilty of a crime in entering into the contract. Section 7049, above quoted, does not require that the ''construction or operation'' which is the subject of exemption be conducted on land which is part of, or contiguous to, the parcel on which the crop is grown. The exemption rather, by its express terms is inclusive of ''*any* construction or operation *incidental to . . . farming,* dairying *agriculture,* viticulture, horticulture . . .'' (Italics added.) The intention of the Legislature to grant a broad exemption

extending throughout the area of farming and its incidental operations appears clear. (See *Kelly* v. *Hill* (1951), 104 Cal. App.2d 61, 65 [230 P.2d 864].) The word "agriculture," in its commonly accepted meaning, includes not only "the production of plants and animals useful to man [but also] . . . to a variable extent the preparation of those products for man's use and their disposal by marketing . . ." (Webster's New International Dictionary, Second Edition.) It seems to me that the grain elevator, located exactly where it is, is part and parcel of defendant's farming operation. At least there is no evidence sufficient to establish that plaintiff, in entering into the contract with defendant, had knowledge or notice that the contemplated construction was other than incidental to defendant's farming operation. The elevator is not a part of the main farm crop growing area, but certainly it is a part of the farm in the same sense that harvesting the crop, collecting it, storing it and marketing it are a part of and incidental to farming. Surely the fact that defendant, after performance of the contract by plaintiff, rented some of the storage space in the elevator to third persons should not be considered as against plaintiff.

For the reasons above stated, I would reverse the judgment.

CARTER, J.—I dissent.

I concur in the views expressed in the dissenting opinion of Mr. Justice Schauer and for the reasons there stated and also for the reasons stated in my concurring opinion in *Fraenkel* v. *Bank of America,* 40 Cal.2d 845 at page 851 [256 P.2d 569], I would reverse the judgment.

Appellant's petition for a rehearing was denied May 15, 1957. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.