[Civ. No. 4053.   Fourth Dist.   May 25, 1950.]

ARNOLD BOWLINE, Respondent, v. A. J. GRIES, Appellant.

Werdel & DiGiorgio for Appellant.

Burum, Young & Wooldridge and Joseph Wooldridge for Respondent.

SHEPARD, J. pro tem.—Plaintiff sued to recover $900 alleged unpaid balance for the drilling of a water well.   Judgment was for plaintiff.   Defendant appeals.

13 January, 1947, plaintiff agreed by written contract to drill a water well on defendant's land. The contract recites that the plaintiff "contractor is skilled in the practice and possesses the appliances for doing such work," and "all tools, machinery, labor and fuel required for said work is to be furnished by contractor." The well was drilled to a depth of 900 feet. The price was $6.00 per foot, totaling $5,400. Four thousand five hundred dollars has been paid. Plaintiff did not have a contractor's license at the time the well was drilled.

There are only two questions presented on this appeal. One, was plaintiff a "contractor" under section 7026 of the Business and Professions Code at the time of the performance of the contract to drill the well? Two, was he exempted by reason of the provisions of section 7049 of said code from its requirements that he have a license?

The sections of the code specially applicable to the questions at issue are as follows:

"Section 7026. 'Contractor': Defined. The term contractor for the purposes of this chapter is synonymous with the term 'builder' and within the meaning of this chapter, a contractor is any person (exceptions not contended to be applicable to case at bar) . . . who . . . undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith."

"Section 7049. Ditch work and agricultural or fire prevention work. This chapter does not apply to any construction or operation incidental to the construction and repair of irrigation and drainage ditches of regularly constituted irrigation districts, reclamation districts, or to farming, dairying, agriculture, viticulture, horticulture, or stock or poultry raising, or clearing or other work upon land in rural districts for fire prevention purposes, except when performed by a licensee under this chapter."

"Section 7031. Allegation and proof of license in action on contract. No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of com-

pensation for the performance of any act or contract for which 'a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract.''

The underlying purpose of the contractor's license law is to protect the general public respecting structural improvements to real property wherein special skill, training and ability are required. It is well known that prior to the enactment of the law thousands of people had been bilked by persons claiming special engineering skill in building various kinds of permanent improvements, including water wells. Anyone with even a casual experience in drilling of water wells is aware that special engineering skill and knowledge is necessary therefor, especially in the depths common to the arid regions of California. (*Roscoe Moss Co.* v. *Jenkins*, 55 Cal.App.2d 369 [130 P.2d 477].)

The use of the word ''builder'' at the commencement of section 7026, *supra*, at first glance, appears slightly confusing when discussing the well drillers. However, the whole section, read together, makes the meaning quite clear that any ''structure, project, development or improvement'' includes all sorts of structures which become a part of the realty.

In our view, the drilling of a water well fairly and reasonably comes within the generally understood meaning of the words above quoted. These words are words of general significance and from a reading of the entire act we are convinced were added by the Legislature to be sure that the subject is thoroughly covered and to prevent evasion by some individual who might claim that the more specific words preceding the hereinabove quoted words were not sufficiently broad. In our opinion any one of these words would have been sufficient to cover well drilling. In *Western Well Works, Inc.* v. *California Farms Co.*, 60 Cal.App. 749 [214 P. 491], the court held that within the meaning of the mechanics' lien law ''a well is a structure.'' In *Kanawha Oil & Gas Co.* v. *Wenner*, 71 W.Va. 477 [76 S.E. 893, 43 L.R.A.N.S. 559], the court held that an oil well, within the purview of the mechanics' lien laws is ''a structure.'' In *Ylijarvi* v. *Brockphaler*, 213 Minn. 385 [7 N.W.2d 314, 318], the court said: ''the rules applicable to building and construction contracts apply to those for drilling or boring wells.'' In *Helm* v. *Chapman*, 66 Cal. 291, 292 [5 P. 352], a pit dug in a mining

claim was held to be "a structure" within the meaning of section 1185 of the Code of Civil Procedure, using the words "building improvement or structure." In *Silvester* v. *Coe Quartz Mine Co.*, 80 Cal. 510 [22 P. 217], a mine is a "structure" within the meaning of the statute on mechanics' liens.

From an examination of the act, it appears that this phase of our law is enacted with the same general purpose of democratic self-government that has become so firmly entrenched in other parts of our lives and is evidenced in the laws governing the practice of law, medicine, dentistry, cosmetology, nursing, barbering, architecture, accountancy, veterinary medicine, pharmacy, optometry and funeral directors and embalmers.

With this thought of self-government in mind, a reference to sections 7001 and 7002 of the Business and Professions Code makes the use of the term "contractor" significant, as found therein. It seems reasonable that the term "contractor," as it is used in said sections 7001 and 7002 is the same "contractor" as required under the act to be licensed, in other words, that all members of the "Contractors' State License Board" shall be "contractors" licensed under the act and actively engaged in the contracting business. Additionally, we find that one member of the board is required to be a "general engineering contractor," and in section 7056 we find that a general engineering contractor is defined to be one whose "principal contracting business is in connection with fixed works for any or all of the following divisions or subjects: *Irrigation,* drainage, water power, *water supply* . . . " (Italics ours.) We think it cannot be questioned that water wells, with their metal casings, as universally used in California, are "fixed works for . . . Irrigation . . . water supply . . .". Therefore, it appears that the Legislature recognized that a person whose principal contracting business is the drilling of water wells (i. e., fixed works for irrigation or water supply) would be a licensed contractor.

In addition to the foregoing on the subject of whether or not a well driller is a contractor, we find that section 7059 specifically authorizes the classification "contractors" in a manner consistent with established uses and procedure in the construction business, this to be done by the registrar with the approval of the board. We also find that in accordance with this authority the registrar has in section 732 of its rules and regulations classified "well drilling," and has defined a well drilling contractor, and for many years last past has

required of well drilling contractors a license in accordance with the requirements of the sections first in this opinion quoted.

One of the commonly recognized rules in aid of construction is that where doubt exists as to the meaning of a statute, the construction placed thereon by the administrative body charged with the enforcement of the act is entitled to respect. (*City of Pasadena* v. *Railroad Com.*, 192 Cal. 61 [218 P. 412]; *Bodinson Mfg. Co.* v. *California Employment Com.*, 17 Cal.2d 321 [109 P.2d 935]; *Hoyt* v. *Board of Civil Service Com.*, 21 Cal.2d 399 [132 P.2d 804].)

In this connection, while it is entitled to little weight, it is interesting to note that at one time the plaintiff herein did have a license under the contractors' license law for the purpose of well drilling, but about a year or two before entering into this contract he "forgot to send the check in on the right date. I just never renewed it." It is apparant, therefore, that he was fully aware of the provisions of the contractors' license law and had previously considered himself bound thereby.

The second question is whether or not section 7049 furnishes plaintiff with an exemption from the necessity for a license.

A close examination of section 7049 shows that it has been divided into two distinct and separate clauses, one of which says that "This chapter does not apply to any construction or operation *incidental to* the construction and repair of irrigation and drainage ditches of regularly constituted irrigation districts, reclamation districts," and the last clause of which says "*or to* farming, dairying, agriculture" etc. It is immediately apparent from looking at this that the words "or to," italicized by us above, apparently segregate the last clause from the first clause and carry the subject of the last clause back to the words "This chapter does not apply . . ." In carrying this analysis farther, we think it is clear that irrigation and water supply are ordinarily *incidental* to farming. It would appear, therefore, that unless the wording is construed to detach "incidental" from farming and apply it only to certain work of irrigation and reclamation districts, there would be a clear hiatus in the legislative reasoning.

With respect to the underlying purposes of the act, also, we think that it is reasonable to suppose that the special engineering skill and knowledge required in well drilling

would prevent any ordinary lay person from being able to judge whether or not another person might be able to accomplish properly the task of drilling, fitting casings, developing, bailing, cleaning, etc. On the other hand, in the matter of ordinary current farming operations, it is reasonable to suppose that the farmer is competent to observe a man's work and know its value and to protect his own interests and that the Legislature had these thoughts in mind in language which literally exempts "farming" but does not exempt well drilling, i. e., matters "incidental" to farming.

We are satisfied that well drilling is of itself a well recognized profession requiring great skill and engineering ability and that it is definitely not farming.

"If it be conceded that sufficient water could in the future be obtained on the land in question by artesian well-boring, which, if used in irrigating the same, would render any considerable part of it fit for agriculture purposes, and this the evidence utterly fails to show, the question would then remain as to whether the development of water in this way could be considered an ordinary farming process. We have no hesitation in answering this question in the negative. An attempt to so develop water has nothing whatever to do, like the clearing land of timber, or even surface water, with the preparation of the soil for agricultural purposes. It is in no proper sense of the word 'farming.' It is more in the nature of a speculative and very costly effort to discover an element which when discovered, and by artificial methods combined with the soil, will render it amenable to ordinary farming processes. The question as to whether water in sufficient quantities will be found several hundred feet below the surface of any particular land, and, if found, whether the supply will continue, must always be more or less uncertain of determination, and especially uncertain in land of the character of, and situated as, the land in controversy. However liberally the words 'ordinary farming processes' may be construed, we are satisfied that they cannot be held to include such a method for the development of water." (*Robinson* v. *Eberhart*, 148 Cal. 495, 499-500 [83 P. 452].)

It is apparently conceded that if the plaintiff is a contractor and if he is not exempted from the necessity of having a license, then he cannot recover in this action since he did not plead and prove that he was a licensed contractor either at the time the contract was made or when it was

performed. (*Loving & Evans* v. *Blick*, 33 Cal.2d 603 [204 P.2d 23].) From the foregoing it is clear that plaintiff's action cannot be maintained.

The judgment is reversed.

Griffin, Acting P. J., and Mussell, J., concurred.