[Civ. No. 7800. Third Dist. Jan. 16, 1951.]

MACHINERY ENGINEERING COMPANY (a Corporation), Plaintiff and Appellant, v. JOHN B. NICKEL et al., Defendants and Appellants.

Sans, Hudson & Perry and C. Ray Robinson for Plaintiff and Appellant.

Linneman, Burgess & Telles for Defendants and Appellants.

ADAMS, P. J.—Machinery Engineering Co., a corporation, brought this action seeking foreclosure of a contractor's lien against property of defendants, and the recovery of a balance alleged to be due it for the construction of a hay mill for defendants. Defendants filed a cross-complaint, alleging breach of warranty on the part of plaintiff, and also that the work done by it was worthless for the purpose for which it was intended and agreed upon by the parties.

The action was tried by the court sitting without a jury, and eventuated in a judgment for plaintiff for $15,179.59, there having been granted to defendants on their cross-complaint the sum of $15,000 which had been deducted from the amount which plaintiff claimed to be due to it. Defendants filed a motion for a new trial, which was denied. Both parties appealed on an agreed statement of the facts. After the filing of briefs by both parties it became apparent, and it is conceded by plaintiff, that its appeal was taken too late. Accordingly it must be dismissed.

Defendants, referred to hereinafter as appellants, seek reversal of the judgment against them on the ground, first, that plaintiff was not licensed as a contractor as requisite to a recovery by it, under the provisions of chapter 9 of division III of the Business and Professions Code. Other grounds for reversal are asserted but in view of our conclusion on the ground above mentioned, they need not be considered.

It is conceded by plaintiff that it was not licensed as a contractor. It claims, however, and the trial court held, that under section 7049 of the Business and Professions Code it was not necessary for it to have a license.

Section 7049 reads:

"This chapter does not apply to any construction or operation incidental to the construction and repair of irrigation and drainage ditches of regularly constituted irrigation districts, reclamation districts, or to farming, dairying, agriculture, viticulture, horticulture, or stock or poultry raising, or

clearing or other work upon land in rural districts for fire prevention purposes, except when performed by a licensee under this chapter.''

In the agreed statement it is set forth that the hay mill was desired by defendants to process loose and baled hay which was to be conveyed to it for processing; that ''The hay mill was and is located in a rural area approximately 15 miles from the nearest railroad. It is in the midst of an agricultural area and surrounded by and adjacent to extensive hay lands owned by several of the Defendants. It is but a few yards from a large dairy in which the brother of Defendant John Nickel has an interest. Plans were considered by Defendants for the development by them of a large feed yard upon that portion of the property not occupied by the mill. The mill consumed and processed only agricultural products and produced material usable only in agricultural dairying, farming and stock raising enterprises.''

The mill is located upon real property formerly owned by defendant Donald C. Bennett and his brother, near Los Banos, Merced County. It does not appear from the agreed statement whether or not the individual defendants are all farmers, but it is inferential that they are; nor is it stated whether the mill is to be used solely for the processing of hay produced by the individual defendants, or whether it is intended to process the hay of others. Subsequent to the execution of the agreement with plaintiff and after the mill was practically finished, all the rights and interests in the contract and in and to the land and premises upon which the mill was constructed were conveyed by the individual defendants to Santa Rita Mill Products Company, a corporation, which corporation was made a party defendant in the action. The question, then, is does the work which plaintiff undertook to and did perform come within the exemption of said section 7049. We are constrained to hold that it does not.

Section 7026 defines the term ''contractor,'' declaring that the term ''contractor'' for the purposes of the chapter is synonymous with the term ''builder'' and that a contractor is ''any person . . . who in any capacity other than as the employee of another with wages as the sole compensation, undertakes to . . . construct . . . any building . . . or other structure. . . .''

It is not contended that plaintiff was an employee of the other contracting parties, and it must be conceded that the mill which it contracted to construct is a building or structure

which required a high degree of engineering skill and knowledge of construction. The cost of same exceeded $80,000. According to the agreed statement it operates as follows: The hay arrives at the mill either in bales or piled loose in a truck or van. Two methods of handling it before it reaches the grinding system are required. Baled hay is placed upon a long chute in individual bales one behind the other. (These bales weigh around 200 pounds each.) The bales are drawn up to the mill by an endless chain drag in the bottom of the chute. As they progress the baling wires are cut so that when the bales reach the mill they are ready to be broken up. They are then fed automatically (that is, by machinery) into the first machine known as the bale buster. When broken up the loosened hay enters an air stream of the mill on its way to the hammer mill. En route through it passes through a metal catcher designed to remove foreign material picked up in the field such as nails, wire, stones, etc. It then goes to the hammer mill where it is pounded against metal screens, the result in coarseness being determined by different screens which are placed in accordance with the result desired. The hammers work against these screens as the chopped hay passes through the screen. It again enters the same air stream to cyclones where it settles to the bottom. It is then fed into a trough through a screw conveyor and carried out of the building. This is the grinding operation. To put molasses into the chopped hay a unit known as the ''molassizing'' unit was provided, though it failed to work. The air stream meanwhile returns to the front of the bale buster to be used again. At the point of the cyclones the air system is tapped by a robber fan designed to equalize pressure in the air system and also to remove dust through cloth segments like a vacuum cleaner. Electricity is employed for operation of the mill, and a heating system is required in connection with the molassizing unit.

From the foregoing it is obvious that the undertaking was a large and complicated one. The mill was capable of handling 14 tons of hay per hour, or 112 tons per eight-hour day. Admittedly it was not to be connected with any particular farm as a part thereof, or used in connection with any particular farm; and the capacity and cost of such mill indicate that it was to be used to mill the hay of others than the six individuals who contracted for its construction. That it was intended to be a commercial enterprise is also supported by the statement that it was built in an area almost exclusively devoted to

farming, which suggests that it would be used to grind the hay of farmers generally, located in the area; also the transfer of the mill to the corporation supports such a conclusion.

▮ Our conclusion from the foregoing is that upon the facts of this case the project, that is, the design and construction of this hay mill and the intended operation thereof were such that there is no factual support for a finding that it came within the terms of the exemption as being either a construction or operation incidental to farming or as being within the plain, ordinary meaning of the word "farming."

Apparently section 7049 of the Business and Professions Code has not heretofore been before the appellate courts for construction except in the case of *Bowline* v. *Gries,* 97 Cal. App.2d 741 [218 P.2d 806]. In that case it was held that an unlicensed well driller, who had contracted with a farmer to drill a water well for the farmer's use on his own land, was a contractor under section 7026, *supra,* and that he was not exempt from being licensed under section 7049, the court saying that well drilling is a well recognized profession requiring great skill and engineering ability, and that the underlying purpose of the contractor's license law is to protect the general public respecting structural improvements to real property wherein special skill, training and ability are required. The same principle applies in the case before us.

It follows that under section 7031 of the Business and Professions Code plaintiff's action was not maintainable. Therefore the judgment against defendants is reversed, and plaintiff's appeal is dismissed.

Peek, J., and Van Dyke, J., concurred.