[S. F. No. 18745.   In Bank.   May 1, 1953.]

CARL M. FRAENKEL, Appellant, v. BANK OF AMERICA
NATIONAL TRUST AND SAVINGS ASSOCIATION,
as Executor, etc., Respondent.

Jack Flinn and Carroll F. Jacoby for Appellant.

John W. Hutton for Respondent.

C. Ray Robinson and William B. Boone as Amici Curiae on behalf of Respondent.

SPENCE, J.—Plaintiff sought to recover the unpaid balance allegedly due for the construction of a grain elevator for Gordon F. Williamson, who was the original defendant but

who died during the pendency of this appeal. Although his representative has been substituted, said Gordon F. Williamson will be referred to as defendant herein. The trial court gave judgment for defendant after sustaining a demurrer to the complaint without leave to amend. There are three companion cases (S.F. Nos. 18746, 18747, and 18748) brought by this same plaintiff against other defendants in similar circumstances, and in which the trial court made like rulings. It has been stipulated that the decisions in those cases will depend on the conclusions reached herein.

The trial court based its ruling solely on the proposition that plaintiff was not a licensed contractor and therefore was not entitled to enforce his claim. Plaintiff contends that the construction work involved may come within the farming exemption of the state licensing law; and that the complaint is capable of amendment to show the required facts. (*King v. Mortimer*, 83 Cal.App.2d 153, 158 [188 P.2d 502].) An analysis of the applicable statutory law and the underlying public policy thereof sustains plaintiff's position.

Plaintiff's action is predicated on a written contract for the construction of a grain elevator for defendant on the basis of "cost plus ten per cent." During the progress of· construction defendant paid plaintiff $15,286.82 on account. Upon completion plaintiff demanded a total of $18,720.36 for the work, and following defendant's refusal to make any further payment, plaintiff commenced this action to recover the claimed balance of $3,433.54, plus interest, attorneys' fees and costs. The complaint alleged that plaintiff performed the contract as an engineer. Defendant interposed a demurrer on the ground that the contract, pleaded as part of the complaint, shows that plaintiff did the work as a contractor, and that he failed to allege possession of a license to act in that capacity. At the hearing it was stipulated that plaintiff was registered as a professional engineer (Bus. & Prof. Code, div. 3, ch. 7, art. 8) but that he was not licensed as a contractor (Bus. & Prof. Code, div. 3, ch. 9, art. 2). Upon the basis of this stipulation and in accord with defendant's view relative to the necessity of plaintiff's compliance with the contractors' license law, the trial court sustained defendant's demurrer to the complaint without leave to amend.

On his appeal plaintiff does not deny that under the applicable statutory law his services were rendered as "a contractor" as that term is defined to include "any person who undertakes to . . . construct . . . any building . . . or other

structure" (Bus. & Prof. Code, § 7026); that "it is unlawful for any person to . . . act in [such] capacity . . . without having a license therefor, *unless . . . particularly exempted . . .* " (*Ibid.* § 7028; emphasis added); and that "no person . . . acting in [such] capacity may . . . maintain any action in any court of this State for the collection of compensation for the performance of any act or contract *for which a license is required* . . . without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract" (*Ibid.* § 7031; emphasis added). However, plaintiff contends that the work he performed was within the following exemption provisions of section 7049 of said code: "This chapter does not apply to *any construction or operation incidental* to the construction and repair of irrigation and drainage ditches of regularly constituted irrigation districts, reclamation districts, or *to farming,* dairying, *agriculture,* viticulture, horticulture, or stock or poultry raising, or clearing or other work upon land in rural districts for fire prevention purposes, except when performed by a licensee under this chapter." (Emphasis added.)

In *Kelly* v. *Hill,* 104 Cal.App.2d 61, 63 [230 P.2d 864], the language of section 7049 was, in our opinion, correctly analyzed and construed so as to exempt, as plaintiff here maintains, "any construction or operation incidental to . . . farming . . . agriculture. . . . " A different construction of the exemption was made in *Bowline* v. *Gries,* 97 Cal. App.2d 741, 745 [218 P.2d 806], so as "to detach 'incidental' from farming and apply it only to certain work of irrigation and reclamation districts" rather than extend it to the succeeding clause of the provision. Such severance in the connected phraseology of the exemption does not appear to correlate with its intended scope, and it is therefore disapproved.

However, there now arises the question of what "construction" is "incidental to farming" or "agriculture." Manifestly, the Legislature did not intend that the construction of every structure bearing a possible relation to the farming industry would be exempt from the contractors' license law as "incidental to farming." That law was enacted for the safety and protection of the public against imposition by persons inexperienced in contracting work, and for the prevention of fraudulent acts by contractors resulting in loss to subcontractors, materialmen, employees, and owners of structures. (*Loving & Evans* v. *Blick,* 33 Cal.2d 603, 609 [204 P.2d 23]; *Franklin* v. *Nat. C. Goldstone Agency,* 33 Cal.2d 628,

632 [204 P.2d 37].) ■ In exempting construction "incidental" to farming, agriculture, and allied occupations from the licensing requirements, the Legislature undoubtedly considered that such construction would include only those structures so closely appertaining to and necessary for the conduct of the designated occupations that they may reasonably be dissociated from the objects and purposes of the licensing law. Thus, the Legislature may well have had in mind prevailing conditions in many rural districts where there are few, if any, licensed contractors and where other persons in the area having the necessary training and experience are readily available for doing various construction jobs as the need may arise. Moreover, many farmers themselves develop special skill in various construction trades qualifying them for contracting among themselves for undertaking the erection of structural improvements upon neighboring farms and yet they are not regularly licensed for such occasionally performed work. ■ But consistent with such practical considerations underlying the exemption in question, we are of the opinion that the construction must be located on a farm and must be incidental to the farmer's own farming operations in order to be "incidental to farming," within the meaning of the exemption.

■ All presumptions favor the legislative classification, which cannot be overturned unless plainly arbitrary. (*Borden's Farm Products Co., Inc.* v. *Baldwin,* 293 U.S. 194, 209-210 [55 S.Ct. 187, 79 L.Ed. 281]; *In re Cardinal,* 170 Cal. 519, 521 [150 P. 348, L.R.A. 1915F 850]; *County of Los Angeles* v. *Hurlbut,* 44 Cal.App.2d 88, 93-94 [111 P.2d 963]; see, also, 5 Cal.Jur., § 193, p. 832.) If the Legislature could have acted upon any conceivably reasonable ground, the courts must assume that the Legislature acted upon such basis. In short, the Legislature's judgment "on the question whether or not a particular provision shall be made for any class of cases, and as to the classification thereof, is not to be interfered with except for very grave causes and where it is clear beyond reasonable doubt that no sound reason for the legislative classification, and for the different provisions regarding the same, exists." (*Cohen* v. *City of Alameda,* 168 Cal. 265, 267 [142 P. 885].)

The premise of a "farming" exemption has been the subject of frequent comment in cases involving the application of workmen's compensation or unemployment insurance acts where "farm labor" or "agricultural labor" is excluded from

the operation of such laws. (Annots. in 7 A.L.R. 1296, 13 A.L.R. 955, 35 A.L.R. 208, 43 A.L.R. 954, 107 A.L.R. 977, 140 A.L.R. 399; 139 A.L.R. 1164, 146 A.L.R. 1318.) ''Agriculture,'' according to Webster's New International Dictionary, Second Edition, is ''the art or science of cultivating the ground, and raising and harvesting crops . . . '' ■ The terms farming, husbandry and tillage are said to be synonymous of or equivalent to the term agriculture. (3 C.J.S. p. 366.) ■ The purport of such legislative exemption envisages the integral association of the work in question with farming or agriculture. (*California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546, 560 [165 P.2d 917].) Not only are the nature of the activity and its close relationship to agriculture among the elements to be considered, but an additional factor is the nature of the business conducted by the person for whom the service is rendered. ■ Thus, specialized services on a farm, such as the installation of irrigation and drainage systems when performed for the farmer himself and constituting an essential contributing factor to the efficient operation of his farming enterprise, are regarded as part of the general farming operation (*Irvine Co.* v. *California Emp. Com.,* 27 Cal.2d 570, 574, 582-583 [165 P.2d 908]), but when the same or similar services are performed for one who is not the owner or tenant of a farm and who is engaged in a commercial enterprise, the work loses its agricultural character (*California Emp. Com.* v. *Butte County etc. Assn.,* 25 Cal.2d 624, 639 [154 P.2d 892]; see, also, *Machinery Engineering Co.* v. *Nickel,* 101 Cal.App.2d 748, 751 [226 P.2d 78]). This same concept appears to have equally proper application in determining whether or not construction work is ''incidental to farming.''

■ So here, if the grain elevator was built on defendant's farm and designed to function as an incidental part of his own farming operations rather than as a commercial enterprise (see *Machinery Engineering Co.* v. *Nickel, supra,* 101 Cal.App.2d 748, 751), there would be a factual basis for holding such structure to be within the terms of the exemption as a ''construction or operation incidental to . . . farming.'' ■ Plaintiff's complaint does not allege any particulars disclosing whether or not these essential elements are present. Such allegations are necessary to show, as a matter of pleading under the state contractors' license law, that plaintiff needed no license while performing the construction work in question, and to avoid the requirement of section 7031

that a license must be alleged. In these circumstances the demurrer to plaintiff's complaint was properly sustained; but since the complaint on its face appears susceptible of amendment to set forth the required factors, the denial of leave to amend constituted an abuse of discretion.

The judgment is reversed with directions to give plaintiff a reasonable time within which to amend his complaint if he be so advised.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I concur in the judgment of reversal but I do not agree with the limited and narrow interpretation placed by the majority upon the exemption provisions of section 7049 of the Business and Professions Code and neither do I agree with the attempt of the majority to reaffirm the holding of this court in *California Emp. Com.* v. *Kovacevich,* 27 Cal.2d 546 [165 P.2d 917] and *California Emp. Com.* v. *Butte County etc. Assn.,* 25 Cal.2d 624 [154 P.2d 892], in both of which cases I dissented and still adhere to the views expressed in my dissents.

The majority opinion states "But consistent with such practical considerations underlying the exemption in question, we are of the opinion that the construction must be located on a farm and must be incidental to the farmer's own farming operations in order to be 'incidental to farming,' within the meaning of the exemption." In my opinion this is altogether too narrow a construction to place upon the language contained in section 7049 of the Business and Professions Code quoted in the majority opinion. In my opinion many situations may arise where construction work of various types may be "incidental to farming" where the construction work is not performed on a farm, and I think it is unwise to lay down such a narrow definition in a case such as this, where it is remanded to the trial court to determine as a question of fact whether or not the construction work here involved was "incidental to farming."

Schauer, J., concurred.