351 P.2d 375

Gordon SALTER, Plaintiff-Appellee,

v.

KINDOM URANIUM CORPORATION, Defendant-Appellant.

No. 6636.

Supreme Court of New Mexico.

April 18, 1960.

Noble & Noble, Las Vegas, for appellant.

Roberto L. Armijo, Las Vegas, for appellee.

MOISE, Justice.

This is a suit on a contract to remove and stockpile ore brought by plaintiff-appellee against defendant-appellant.

On January 24, 1957, plaintiff and defendant entered into a written contract whereby plaintiff agreed "to perform certain mining work on copper siliceous ores" on a certain piece of property near Tecolote, New Mexico, leased by defendant. Plaintiff agreed "to pay for all labor, work, mining expenses, material, explosives and moving commercial copper ores to specified stockpile location at Tecolote, New Mexico," and the defendant agreed to reimburse plaintiff therefor "a maximum of $4.00 (four dollars) per ton of commercial copper ore."

The contract further provided that payment was to be made as follows: "Two dollars ($2.00) per ton of commercial copper ore as soon as one hundred (100) tons of commercial ore is stockpiled by the Operator (plaintiff) and that Owner (defendant)

agrees to pay the other two dollars cost from mining said ore as soon as full settlement payment is made by the Smelter to the Owner (defendant)."

The contract was subject to termination by either party upon fifteen-day written notice by registered mail. It further provided that not less than 500 tons of commercial copper ore should be mined under its terms.

Under the first count of his complaint, plaintiff alleged that pursuant to the contract he mined and stockpiled 500 tons of "commercial copper ore," and had thereby earned $2,000 which defendant had failed and refused to pay excepting the sum of $400, and an additional amount of $170 for which defendant was entitled to credit on account of furnishing by defendant of certain caps, dynamite and fuses, and that a balance of $1,430 was due.

In his second cause of action, plaintiff alleged that he stockpiled 1,200 tons of "commercial copper ore" for defendant at San Pablo, New Mexico, and that it was agreed between him and defendant that he should be paid therefor at the same rate as provided in the written contract pleaded in his first cause of action, and that defendant owed him $4,800 for this work.

In a third cause of action plaintiff claimed that defendant was indebted to him in the reasonable amount of $200 for certain bull-dozer work, compressor work and blasting not included in the contracts sued on in counts one and two.

By answer, the defendant admitted the contract, but denied that any "commercial copper ore" was mined or stockpiled; alleged that none of the three causes of action stated facts upon which the relief sought could be granted, and by counterclaim asked judgment for $470.87 assertedly overpaid by defendant to plaintiff.

Upon trial, the court found that plaintiff mined and stockpiled 325.53 tons of "copper ore" at Tecolote, New Mexico, and 1151 tons of "copper ore" at San Pablo, New Mexico; that of this only 37.53 tons were shipped. The court further found that plaintiff was entitled to payment for 37.53 tons at the rate of $4 per ton and 1,439 tons at the rate of $2 per ton, less credit for a payment of $390.62 and $170 for fuses, caps and dynamite, or a total of $2,467.50 for which amount judgment was rendered. No findings were made nor was any judgment entered on the third cause of action or on the counterclaim. The defendant has prosecuted this appeal to correct errors claimed to have been made by the court.

The first two points relied on assert that certain of the court's findings are insufficient in law to support the conclusions reached by it or are not supported by substantial evidence. The third point is addressed to the court's action in refusing to dismiss the complaint for failure to state

facts upon which the relief sought could be granted, and the fourth ground is for failure to sustain defendant's motion for judgment at the close of plaintiff's case, and is in the nature of a demurrer to the evidence.

We shall examine the third point first because if it is meritorious the appeal will thereby be disposed of and consideration of the other points will not be necessary.

By its answer, defendant alleged failure of the complaint to state facts sufficient to be a basis for the relief sought. This defense was argued to the court—it being pointed out that the contracts alleged were for the performance of certain excavation work and there was no allegation that the plaintiff was licensed as a contractor as required by the laws of New Mexico. Plaintiff admits that he is not so licensed.

§ 67–16–14, N.M.S.A.1953, reads in part, as follows:

"No contractor as defined by section 3 (67–16–3) of this act shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by this act without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

"The word 'person' as used in this section includes an individual, a firm, co-partnership, corporation, association or other organization."

§ 67–16–1, N.M.S.A.1953, sets forth circumstances when a license is required, as follows:

"It shall be unlawful for any person, firm, copartnership, corporation, association or other organization, or any combination of any thereof, to engage in the business or act or offer to act in the capacity or purport to have the capacity of contractor within this state without having a license therefor as herein provided, unless such person, firm, copartnership, corporation, association or other organization is particularly exempt as provided in this act (67–16–1 to 67–16–9, 67–16–12 to 67–16–16). Evidence of the securing of any permit from a governmental agency or the employment of any person on a construction project shall be accepted in any court as prima facie evidence of the existence of a contract."

A contractor is defined in § 67–16–3, N.M.S.A.1953, as follows:

"A contractor within the meaning of this act is a person, firm, copartnership, corporation, association, or other organization, or any combination of any thereof, who for either a fixed sum, price, fee, percentage, or other compensation other than wages, undertakes or offers to undertake, or purports to have

the capacity to undertake to construct, alter, repair, add to or improve any building, excavation, or other structure, project, development or improvement, or any part thereof; Provided, that the term contractor, as used in this act, shall include subcontractor, but shall not include any one who merely furnishes materials, or supplies without fabricating the same into, or consuming the same in the performance of the work of the contractor as herein defined. Provided nothing herein shall be construed to apply to any construction or operation incidental to the construction and repair of any highway, to a public utility in the construction, reconstruction, operation or maintenance of its plant other than construction of buildings; or to the drilling, testing, abandoning or other operation of any petroleum or gas well, or to geophysical or similar exploration for oil or gas, and Provided further that no railroad company shall be construed to be a contractor."

The question presented under this point is whether or not the plaintiff herein was a contractor required to be licensed under the sections quoted above. It is clear that if he was, he cannot maintain this action. We so held in Fischer v. Rakagis, 59 N.M. 463, 286 P.2d 312.

Plaintiff argues that the work here contracted for did not come under the statute because it was not to "construct, alter, repair, add to or improve any building, excavation, or other structure, project, development or improvement, or any part thereof" since the statute deals with building, improving or constructing, and does not cover mining or stockpiling copper ore. He further argues that since "the drilling, testing, abandoning or other operations of any petroleum or gas well" and "geophysical or similar exploration for oil or gas" are excepted in § 67–16–3, the operations here being similar in character are also excepted.

Concerning the first argument that the statute applies only to building, constructing or improving, we would point out that by its language it applies to all undertakings, not excepted from its operation, "to construct, alter, repair, add to or improve" not only any "building, excavation, or other structure" but also includes these activities when performed on a "project, development or improvement." It seems clear to us that if the work here contracted to be done is not included within the term "excavation" it must certainly be within any broad concept of a "structure," "project," "development" or "improvement."

We have held under our mechanics' lien law that a water well is a "structure." Dysart v. Youngblood, 44 N.M. 351, 102 P.2d 664. In the State of California it was held many years ago that under their mechanics' lien law (Code Civ.Proc. § 1181 et seq.)

"a mine or pit sunk within a mining claim may be called a structure." Helm v. Chapman, 66 Cal. 291, 5 P. 352.

In the recent case of Bowline v. Gries, 97 Cal.App.2d 741, 218 P.2d 806, 808, it was held that the drilling of a water well came within the terms "structure, project, development or improvement," (Business and Professions Code, § 7026) and then concluded that the California contractors licensing law covered one whose principal contracting business was the drilling of water wells.

Insofar as this decision held that the drilling of the water well in question did not come within the section of the statute exempting contracting incidental to agricultural pursuits it was later criticized in the cases of Machinery Engineering Co. v. Nickel, 101 Cal.App.2d 748, 226 P.2d 78, and Kelly v. Hill, 104 Cal.App.2d 61, 230 P.2d 864, and was finally disapproved by the Supreme Court of California in the case of Fraenkel v. Bank of America National Trust & Savings Ass'n, 40 Cal.2d 845, 256 P.2d 569. Be this as it may, it is clear from all these cases that the contractors' licensing act of California applied to water well contracting and the other activities in issue absent the exemption requirement.

That the rule is the same in New Mexico is clear from our decision in B & R Drilling Co. v. Gardner, 55 N.M. 118, 227 P.2d 627, where it was held that a contract to drill a water well for irrigation purposes came within the exception of § 67–16–2, N.M.S.A. 1953, that the contractors' licensing act did not apply to "agriculture." Arizona has held the same. Shuey v. Shearman, 77 Ariz. 207, 269 P.2d 607.

Probably the closest case on its facts is Atchison, T. & S. F. R. Co. v. Andrews, 10 Cir., 1954, 211 F.2d 264, where a plaintiff who contracted to dig test holes for development of uranium was held not to be barred by the New Mexico contractors' licensing statute because he was an employee and not a contractor, and accordingly not required to be licensed by the statute. The clear intimation is to the effect that if he had not been an employee he would have been a contractor and the result would have been otherwise.

We are not impressed with the argument that this contract should be included within the exception of "drilling, testing, abandoning or other operation of any petroleum or gas well, or (to) geophysical or similar exploration for oil or gas." On the contrary, since the legislature clearly had in mind certain activities akin to mining and did not include the same within the exception, we are constrained to the opinion that their intention was to leave such activities under the act. This is the result which follows from an application of the maxim "inclusio unius est exclusio alterius."

It is our conclusion that the plaintiff had here contracted to "construct, alter, * * *

add to or improve" an "excavation, or other structure, project, development or improvement" and not having a license issued by the proper authorities of the State of New Mexico, and not being exempted from operation of the statute, is barred under the provisions of § 67–16–14, N.M.S.A.1953, from maintaining this action.

Having so concluded we do not consider the other points relied upon by appellant for reversal.

The judgment will be reversed with directions to the trial court to reinstate the case upon its docket and enter judgment for appellant and dismiss appellee's complaint.

It is so ordered.

McGHEE, C. J., and CARMODY and CHAVEZ, JJ., concur.

COMPTON, Justice (dissenting).

The decision in this case must turn on a construction of the statute, § 67–16–3, 1953 Comp., as it is perfectly obvious that not a single authority cited factually bears upon the case, even remotely. I fail to see by what reasoning the majority finally concluded that the plaintiff had contracted to "construct, alter, * * * add to or improve" an "excavation, or other structure, project, development or improvement." Significantly, the opinion does not specify which of these activities plaintiff contracted

to do. It seems clear that this portion of the statute defining a contractor and requiring a license refers to the activity of building generally and related subjects.

Had the plaintiff *contracted* to sink a mining shaft, drill water wells, or drill test holes for the development of copper ore, no doubt he would not be exempted from the operation of the statute because the shaft, the wells and the test holes would be the very things the contract required to be done.

Turning to the evidence, I quote from the testimony of Mr. Moya, president of defendant company, as follows:

"Q. What did that work consist of? A. Mining.

"Q. Is that blasting? A. Yes, sir.

"Q. And what else? A. Moving the ore. Moving overburden of the surface, the first time.

"Q. In other words, removing the top soil so as to uncover the ore? A. Yes, sir.

"Q. Now, what kind of equipment did Mr. Salter use in connection with this project? A. A small bulldozer.

"Q. What else? A. A jack hammer for drilling holes; of course, dynamite and caps and fuse."

Clearly, all that was to be done under this contract was to remove the top soil, blast the rock so that it could be loaded and hauled to a stockpile.

As I view the effects of the majority decision, a contract to haul sand, pick out flagstones, or construct earthen ponds for compensation, other than wages, falls within the statute. If correct, a contract to shovel black soil from an arroyo, or dig mesquite roots for fuel, would fall within its purview. How could any of these things be done without leaving an excavation?

I cannot believe the legislature intended the construction expressed by the majority opinion; therefore, I dissent.