Filed 4/21/22  P. v. Tenerelli CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C091332 |
| v. | (Super. Ct. No. 18F6279) |
| PATRICK ANDREW TENERELLI, | |
| Defendant and Appellant. | |

A jury convicted defendant Patrick Andrew Tenerelli of contracting without a license in a declared disaster area in violation of Business and Professions Code section 7028.16.[1]  The trial court sentenced defendant to two years eight months in state prison.

---

[1]  Undesignated statutory references are to the Business and Professions Code.

1

Defendant now contends (1) the trial court should have instructed the jury that under section 7053, an employee does not need a contractor's license, and defense counsel was ineffective in failing to object to the instruction actually given and failing to request an instruction on section 7053; (2) the trial court erred in excluding evidence that defendant said he was not a licensed contractor; and (3) the trial court erred in instructing the jury with CALCRIM No. 358 [evidence of defendant's statements].

Finding no merit in defendant's contentions, we will affirm the judgment.

BACKGROUND

Former Governor Edmund G. Brown, Jr., declared a state of emergency in Shasta County due to the Carr fire in July 2018. In September 2018, California Contractors State License Board enforcement representative James Spence, along with other Contractors State License Board enforcement representatives and investigators from the Shasta County District Attorney's Office, conducted an undercover operation to apprehend unlicensed individuals advertising to do work in Shasta County that would require a contractor's license. Spence found a business card for Pat's Painting and Handyman services at a paint store in Redding in the course of locating advertisements by unlicensed contractors. The card had a contractor's license number that had been revoked.

Posing as the owner of a property on Harlan Drive in Redding, Spence called the telephone number on the business card and discussed with defendant a project to replace a metal fence damaged in the Carr fire. Defendant did not identify himself as a licensed contractor, but said he could do the work. His contractor's license was revoked in 2016. He showed up at the Harlan Drive property with Gilfred Brown.

Spence showed defendant the fire-damaged fence and said he wanted the fence removed and replaced with a wood fence. Defendant again said he could do that work. When Spence asked for a price, defendant and Brown called a lumber supply company to get pricing. According to Spence, defendant said he could do the job for $4,292. Other

2

members of Spence's team monitored the interaction between Spence and defendant through a wire on Spence's person, and confirmed that defendant offered to do the fence work for an amount exceeding $500. Spence testified that defendant did not claim he was a licensed contractor. But defendant also did not offer to do the work as Spence's employee, did not say he would be "the person responsible" and work for a salary, and did not offer to work at an hourly rate.

When Spence gave a prearranged signal to notify the other members of his team that he had received a bid exceeding $500, defendant was placed under arrest.

The People charged defendant with contracting without a license in a declared disaster area. An amended information included a Penal Code section 1170.12 prior strike allegation. Defendant's first trial ended with a hung jury.

Unlike at the first trial, defendant testified at his second trial. He admitted that the business card for Pat's Painting and Handyman services belonged to him, but he said the card had been posted before his license was revoked. Defendant said he received a call in September 2018 about some work; he told the person he charged $30 an hour but the price was negotiable. He said he went to a Harlan Drive address with a partner, Spence showed him what needed to be done, and defendant told Spence defendant could probably replace the fence. Defendant and Brown measured the length of the fence to be replaced. It was about 200 feet. Defendant called a lumber supplier to ask about the cost of materials. Defendant testified he handed his phone to Spence so that Spence could speak with the supplier, and he told Spence he would charge $25 an hour. In contrast with Spence's testimony, defendant claimed he could not give Spence a price because he did not know how long the job would take.

The jury convicted defendant of contracting without a license in a declared disaster area. In a bifurcated proceeding the trial court found that defendant had previously been convicted of violating Penal Code section 246.3 (discharge of a firearm with gross negligence) and that the Penal Code section 1170.12 prior strike conviction

3

allegation was true. The trial court denied defendant's motion to dismiss the prior strike pursuant to Penal Code section 1385 and imposed a state prison term of two years eight months.

Additional background facts will be recounted in the Discussion as relevant to the contentions on appeal.

DISCUSSION

I

Defendant contends the trial court should have instructed the jury that under section 7053, an employee does not need a contractor's license, and defense counsel was ineffective in failing to object to the instruction actually given and failing to request an instruction on section 7053. Because he asserts ineffective assistance, and because we must determine in any event whether the claimed error affected his substantial rights (*People v. Jimenez* (2016) 246 Cal.App.4th 726, 730 (*Jimenez*)), we will address the merits.

A

The trial court instructed the jury as follows: "[D]efendant is charged in Count 1 with contracting without a license in a declared disaster area, in violation of Business and Professions Code section 7028.16. To prove that the defendant is guilty of this crime, the People must prove that one, the defendant engaged in the business of or acted in the capacity of a contractor. Two, in connection with the offer . . . of repairs to a residential or nonresidential structure for damage caused by a natural disaster. Three, for which a state of emergency was proclaimed by the Governor pursuant to section 8625 of the Government Code. And four, at the time the defendant did not possess a valid contractor's license."

The trial court also told the jury, consistent with section 7026, that the term "contractor" meant "any person who undertakes to or offers to undertake to or purports to have the capacity to undertake or submits a bid to . . . construct, alter, repair, add to,

4

subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement . . . ."  In addition, the trial court defined "structure, project, development or improvement" to include all sorts of structures which become part of the realty, as that phrase was defined in *Bowline v. Gries* (1950) 97 Cal.App.2d 741, 743, disapproved on other grounds in *Fraenkel v. Bank of America National Trust & Savings Assoc.* (1953) 40 Cal.2d 845, 848.  The trial court instructed that a fencing contractor constructs, erects, alters or repairs all types of fences.  That definition is drawn from the regulations classifying specialty contractors.  (Cal Code Regs., tit. 16, § 832.13.)  The trial court further instructed, pursuant to sections 7028 and 7048, as follows:  "In California, anyone who contracts to perform work on a project valued at $500 or more in combined labor and material costs, must hold a current valid license issued by the Contractor State License Board.  [¶]  If the unlicensed person engaging in the business of or acting in the capacity of a contractor has agreed to furnish materials and labor on an hourly basis, the contract price for the purposes of this section means the aggregate sum of the cost of materials and labor furnished and the cost of completing the work to be performed."

Notwithstanding the foregoing instructions, defendant contends the trial court should have instructed the jury on how to determine whether a person is engaging in the business of a contractor or working for wages as an employee.

" 'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.' " (*People v. Anderson* (2011) 51 Cal.4th 989, 996 (*Anderson*).)  That duty extends to instructions on the elements of the charged offense and the defendant's theory of the case.  (*Ibid.*; *People v. Rubalcava* (2000) 23 Cal.4th 322, 333-334.)

The purpose of the Contractors State License Law (§ 7000 et al.) "is to protect the public from incompetence and dishonesty in those who provide building and construction

5

services.  The licensing requirements provide minimal assurance that all persons offering such services have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." (*Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152, 165; see also Assem. Floor Analysis of Assembly Bill No. 370 (2009-2010 Reg. Sess.) as amended Mar. 23, 2009, p. 2 [commenting that in addition to the financial losses they cause consumers, unlicensed contractors generally do not obtain insurance, leaving their workers without any protection and homeowners potentially liable, and unlicensed contractors drive down wages and undercut legitimate businesses].)  It is unlawful for a person to engage in the business or act in the capacity of a contractor, without having a license therefor, in connection with the offer of improvements to a residential structure or property for damage caused by a natural disaster for which a state of emergency is proclaimed by the Governor pursuant to Government Code section 8625.  (§ 7028.16.)

But there is an exemption under the Contractors State License Law for employees. Under Section 7053, an exempt employee is a person "who receives wages as his or her sole compensation, does not customarily engage in an independently established business, and does not have the right to control or discretion as to the manner of performance so as to determine the final results of the work performed."  The presumption in Labor Code section 2750.5 that a worker is an employee rather than an independent contractor does not apply to determinations under section 7053.  (*Fillmore v. Irvine* (1983) 146 Cal.App.3d 649, 656-657; *Hurst v. Buczek Enterprises, LLC* (N.D. Cal. 2012) 870 F.Supp.2d 810, 816-818.)

Defendant did not present a defense based on section 7053.  He argued he acted as a handyman and not a licensed contractor; he did not perform work at the Harlan Drive property; he did not claim to be a licensed contractor; and he gave an hourly rate of $25 and did not know how long the job would take, but even if it took two days the total cost would not exceed $500.  Defendant did not claim to be an exempt employee, and there

6

was no substantial evidence supporting a claim under section 7053 that defendant was to serve as an employee. (Cf. *Vaughn v. De Kreek* (1969) 2 Cal.App.3d 671, 676-677; *Dahl-Beck Electric Co. v. Rogge* (1969) 275 Cal.App.2d 893, 901; *Jackson v. Pancake* (1968) 266 Cal.App.2d 307, 308-309; *Rodoni v. Harbor Engineers* (1961) 191 Cal.App.2d 560, 562-563.) The trial court had no duty to instruct on an affirmative defense if there was no substantial evidence supporting the defense. (*Anderson, supra*, 51 Cal.4th at p. 996; see *People v. Salas* (2006) 37 Cal.4th 967, 972, 982-983.)

Defendant points to his testimony that he told Spence he would work hourly, and Spence's testimony that defendant did not claim to be a licensed contractor. But he cites no authority for the proposition that a person who charges an hourly rate is necessarily an employee and not an unlicensed contractor. Section 7028 recognizes that a person acting in the capacity of a contractor can charge on an hourly basis. (§ 7028, subd. (f).) Moreover, even if defendant's business card had been posted previously and he did not hold himself out as a licensed contractor, that did not exempt him from the licensing requirement. (See *Pickens v. American Mortgage Exchange* (1969) 269 Cal.App.2d 299, 302.) Under the circumstances, defendant has not established that an instruction on the section 7053 exemption was warranted. (*People v. Dennis* (1998) 17 Cal.4th 468, 514 [stating that the defendant forfeits his instructional error claim if he believed the instructions given were incomplete but failed to request additional or clarifying instructions].)

B

Because defendant's instructional challenge lacks merit, his ineffective assistance claim fails. To establish ineffective assistance of counsel, a defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to the defendant. (*People v. Maury* (2003) 30 Cal.4th 342, 389 (*Maury*); *Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674] (*Strickland*).) An

7

ineffective assistance claim fails if the defendant makes an insufficient showing on either of those components. (*People v. Holt* (1997) 15 Cal.4th 619, 703; *Strickland*, at p. 687.) Here, defendant's trial counsel may have determined that a section 7053 instruction was not warranted by the evidence presented, and defendant cannot establish prejudice, i.e., that had his trial counsel requested a section 7053 instruction, the jury would have found that he was an employee and, thus, not subject to the licensing requirement.

## II

Defendant next claims the trial court erred in excluding evidence that he told Spence he was not a licensed contractor.

Spence testified at the first trial that defendant told him defendant was not a licensed contractor. At the second trial, the People moved to exclude defendant's statement to Spence as inadmissible hearsay, inherently unreliable and inadmissible under Evidence Code section 352. Defendant opposed the People's motion and made his own motion to admit the evidence. The trial court excluded the evidence.

## A

Defendant argues his statement was admissible under Evidence Code section 1241. Evidence of a statement is not made inadmissible by the hearsay rule if the statement is offered to explain, qualify or make understandable conduct of the declarant and was made while the declarant was engaged in the conduct. (Evid. Code, § 1241.) As explained by the comment to Evidence Code section 1241, "where a person's conduct or act is relevant but is equivocal or ambiguous, the statements accompanying it may be admitted to explain and make the conduct or act understandable." We review a trial court ruling on the admissibility of evidence, including rulings on the application of the hearsay rule, for abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 725.)

Defendant informed the trial court that he expected Spence would testify that defendant said he was not a contractor during a telephone call with Spence prior to the visit to the Harlan Drive property. Defendant argued his statement to Spence was

8

necessary to explain why he went to the property. The trial court ruled that under defendant's offer of proof, his statement was not contemporaneous with the act of appearing at the property and defendant did not show how the statement explained the visit to the property. We discern no abuse of discretion by the trial court under these circumstances.

## B

Defendant also asserts arguments not raised in the trial court. He says his statement explained his intent to work for wages and not as a contractor. He claims his statement explained why he was discussing a job he was not licensed to undertake. And he argues his statement was not hearsay but rather an offer to enter into an employment contract. We decline to address arguments raised for the first time on appeal. (See *People v. Abel* (2012) 53 Cal.4th 891, 924; *People v. Lancaster* (1957) 148 Cal.App.2d 187, 196.)

## C

Defendant further claims the People are judicially estopped from seeking to exclude his statement because the prosecutor presented evidence of the statement during the first trial.

The doctrine of judicial estoppel precludes a party from taking inconsistent positions in separate judicial proceedings. (*The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 841 (*The Swahn Group, Inc.*).) "[T]he doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 (*Jackson*); see also *People v. Castillo* (2010) 49 Cal.4th 145, 155.) Application of the doctrine is discretionary even when all of the factors are present. (*MW Erectors,*

9

*Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422; see *Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 307 [" '[j]udicial estoppel is an extraordinary remedy that should be applied with caution' "].)

"The third . . . factor requires that the party to be estopped was successful in asserting the first position. [Citation.] This means not just that the party prevailed in the earlier action, but that 'the tribunal adopted the position or accepted it as true[.]' " (*The Swahn Group, Inc., supra*, 183 Cal.App.4th at p. 845.) This factor is of particular importance because the purpose of judicial estoppel is to protect the integrity and dignity of the judicial process. (*Id.* at pp. 846-847; see *Lonky v. Patel* (2020) 51 Cal.App.5th 831, 847; but see *Levin v. Ligon* (2006) 140 Cal.App.4th 1456, 1476-1478; *Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 119.)

Here, the record does not show that the trial court took any action with regard to defendant's statement to Spence. Although Spence testified at the first trial that at some point defendant admitted he was not a licensed contractor, there was no objection or motion and no trial court ruling on that testimony. On these facts, there was no risk of inconsistent trial court determinations or threat to judicial integrity. The claim of judicial estoppel lacks merit.

D

Defendant also asserts an ineffective assistance of counsel claim in a perfunctory manner. He says there can be no tactical reason for defendant's trial counsel to fail to make appropriate objections and argument regarding the admissibility of defendant's statement to Spence. But defendant's trial counsel sought to admit defendant's statement to Spence. Defendant fails to state what additional meritorious arguments his trial counsel should have raised, and fails to demonstrate prejudice. (*Maury, supra*, 30 Cal.4th at p. 389; *Strickland, supra*, 466 U.S. at p. 687.)

## III

Defendant further claims the trial court erred in instructing the jury with CALCRIM No. 358 [evidence of defendant's statements].

Spence testified that he completed a form with a $4,292 contract price, reviewed the form with defendant, and defendant signed the form. The form was shown to the jury at trial. Defendant denied that he gave Spence a number in the neighborhood of $4,000 and said he was coerced to sign the form.

The trial court instructed the jury, pursuant to CALCRIM No. 358, as follows: "You have heard evidence that the defendant made oral or written statements before the trial. You must decide whether the defendant made any of these statements in whole or in part. If you decide that the defendant made such statements, consider the statements, along with all the other evidence in reaching your verdict. It is up to you to decide how much importance to give to the statements. Consider with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded."

Defendant did not object to the CALCRIM No. 358 instruction. Nevertheless, we review the merits of his challenge to determine if the instruction affected his substantial rights. (*Jimenez, supra*, 246 Cal.App.4th at p. 730.)

Defendant argues the jury should have been instructed to consider the reliability of the form signed by defendant. But even if the trial court erred in instructing with CALCRIM No. 358, no undue prejudice resulted.

The instruction to consider with caution any statement made by the defendant tending to show his guilt applies to oral statements by the defendant. (*People v. Diaz* (2015) 60 Cal.4th 1176, 1186-1187.) The purpose is to help the jury in determining whether a statement was in fact made. (*Id.* at pp. 1185-1186.) Here, although defendant denied providing a bid of $4,292 to do the fence work, the form he signed was in writing.

11

We also consider all of the jury instructions in assessing prejudice. (*People v. Sanders* (1995) 11 Cal.4th 475, 535-537.) The trial court told the jury it must decide what happened based on the evidence presented and impartially consider all the evidence received. The trial court said that if the jury determined there was a conflict in the evidence, the jury must decide what evidence, if any, to believe. The trial court described the factors to consider in evaluating witness testimony. It told the jury that defendant may not be convicted of any crime based on his out-of-court statements alone and the jury may rely on the defendant's out-of-court statements to convict him only if the jury first concluded that other evidence, even if slight, showed that the charged crime was committed. The trial court repeatedly told the jury that it may not convict defendant unless the People proved his guilt beyond a reasonable doubt. Further, the CALCRIM No. 358 instruction stated that the jury must decide whether defendant made the statement attributed to him.

We presume the jury understood and followed the trial court's instructions. (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.) In his closing statement, defendant's trial counsel referenced the CALCRIM No. 358 instruction and told the jury there was no recording of defendant's statements to Spence and defendant did not complete the written form, suggesting that the jury should view those statements with caution. The prosecutor did not refer to the CALCRIM No. 358 instruction in his closing and rebuttal statements. Defendant fails to show it was reasonably probable under these circumstances that the jury would have reached a more favorable result had the trial court not instructed with CALCRIM No. 358. (*People v. Xiong* (2020) 54 Cal.App.5th 1046, 1081-1082 [error in giving CALCRIM No. 358 instruction is reviewed under the *People v. Watson* (1956) 46 Cal.2d 818 standard].)

Because we reject defendant's instructional error claim on the merits, we do not need to discuss his related ineffective assistance of counsel claim.

12

# DISPOSITION

The judgment is affirmed.

                                        _____/S/_____
                                        MAURO, Acting P. J.

We concur:

_____/S/_____
RENNER, J.

_____/S/_____
KRAUSE, J.